FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 02, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALLEN. C.,<br><br>                     Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>              Defendant. | NO:  1:18-CV-3243-FVS<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment.  ECF Nos. 11 and 12.  This matter was submitted for consideration without oral argument.  The Plaintiff is represented by Attorney D. James Tree.

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration.  Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet.  *See* Fed. R. Civ. P. 25(d).

The Defendant is represented by Special Assistant United States Attorney Benjamin J. Groebner. The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 12, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 11.

## JURISDICTION

Plaintiff Allen C.[2] protectively filed for supplemental security income on May 18, 2015, alleging an onset date of May 1, 2015. Tr. 223-28. Benefits were denied initially, Tr. 134-38, and upon reconsideration, Tr. 142-45. Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on July 26, 2017. Tr. 47-81. Plaintiff was represented by counsel and testified at the hearing. *Id*. The ALJ denied benefits, Tr. 18-45, and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. § 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

---

[2] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

Plaintiff was 42 years old at the time of the hearing.  Tr. 50.  He left school after the eighth grade.  Tr. 50.  At the time of the hearing, Plaintiff lived at his mother's house with his two kids, ages six and seven.  Tr. 51-52.  Plaintiff has work history as a maintenance mechanic.  Tr. 75-76.  He testified that even if he had a job where he could sit on a stool, he still could not do it because he would have to extend his hands out in front of him.  Tr. 72.

Plaintiff testified that he has back pain that radiates into his legs and arms, hip pain, right knee pain, and depression,   Tr. 53-55.  He reported that he uses a cane; however, he also testified that he is "using a bicycle to get around," he rides at night to prevent stiffness the next morning, he can ride "a couple of miles" before he has to take a break, he rides from Selah to Yakima in about 30 minutes, and he goes for bike rides with his kids.  Tr. 56-59, 64.  Plaintiff testified that it is painful to hold things out in front of him and to the side, and painful to reach overhead.  Tr. 59-62.  He reported that he could lift ten pounds "but [he's] not going to hold it for a long time," he "love[s] laying down," and on bad days he can't walk.   Tr. 62, 67-69.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id*.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner

also must consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 18, 2015, the application date. Tr. 23. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the spine, status post right knee meniscal tear, learning disability, and depression. Tr. 24. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 24. The ALJ then found that Plaintiff has the RFC

to perform sedentary work as defined in 20 CFR 416.967(a) except as follows. The claimant can frequently climb ramps and stairs but can never climb ladders, ropes, or scaffolds. The claimant can occasionally stoop but can never kneel or crawl. The claimant can never reach overhead with his dominant right upper extremity but can frequently reach in all other directions with the right upper extremity. The claimant is limited to work in environments with no concentrated exposure to extremes of cold. The [claimant] can perform simple, routine tasks with short, simple instructions. The claimant should not perform work requiring him to read instructions other than simple instructions, write reports, or do mathematical calculations. The claimant can read simple instructions.

Tr. 27-28. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 39. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: escort vehicle driver and stuffer, toys. Tr. 39-40. On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since May 18, 2015, the date the application was filed. Tr. 40.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 11. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's symptom claims;

2. Whether the ALJ properly weighed the medical opinion evidence; and

3. Whether the ALJ erred at step five.

**DISCUSSION**

**A. Plaintiff's Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's

testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. Tr. 29.

### 1. Lack of Objective Medical Evidence

First, the ALJ noted that Plaintiff's statements about his symptoms were inconsistent with the longitudinal record. Tr. 29. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

As an initial matter, the Court notes that in support of this finding, the ALJ cites medical evidence that predates the relevant adjudicatory period. Generally, evidence prior to the alleged onset date is of limited probative value. *See*, *e.g.*,

*Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008)

(holding that "[m]edical opinions that predate the alleged onset of disability are of

limited relevance."). However, as it was considered by the ALJ in this case, the

Court briefly recounts the medical evidence set out by the ALJ contradicting

Plaintiff's claims of disabling limitations prior to the relevant period, including:

benign mental status examination results; mild to moderate depression; negative

and positive straight leg tests; negative McMurry's test; no crepitation in hip or

knee; normal gait; normal muscle tone; normal strength; normal thoracolumbular

range of motion with tone and no spasticity; and consistent subjective reports of

pain and spasms. Tr. 30-33 (citing Tr. 395, 400, 402, 407-08, 416-19, 425-26, 498,

529-34, 348-49 (noting Plaintiff "appeared well), 443-44). Most notably, the only

objective testing in the record was prior to the relevant adjudicatory time period.

In July 2013, an MRI of Plaintiff's back showed only multilevel "moderate"

degenerative changes with "mild" disc bulges, and an EMG study "demonstrated

some spontaneous electrical activity in the right tibialis anterior muscle, suggesting

a chronic right lumbar radiculopathy." Tr. 31 (citing Tr. 348-49); *See Burch v.*

*Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (minimal objective evidence is a

factor which may be relied upon in discrediting a claimant's testimony, although it

may not be the only factor).

　　The ALJ also set out medical evidence contradicting Plaintiff's claims of

disabling limitations during the relevant adjudicatory period. For example, the

ALJ noted that in May 2015, "the only positive examination finding was subjective pain to palpation over the left SI joint/buttock area and 'mild' spasm to the lumbar paraspinous muscles." Tr. 33 (citing Tr. 360). In August 2015, Plaintiff's treating physician ordered an updated MRI, and noted Plaintiff's subjective complaints of pain and spasm in the paraspinous muscles, as well as a positive straight leg test on the right. Tr. 33-34 (citing Tr. 542). In December 2015, treatment notes indicated moderately limited lumbar range of motion, self-reported tenderness over the right sacroiliac joint, and Plaintiff's "hesitancy when going from flexed to erect position" of lumbar spine, and normal x-rays of Plaintiff's right hip pain. Tr. 34, 588-89. In February 2016, physical examination results were normal aside from Plaintiff's reported "spasm noted to lumbar spine"; in January 2017, "no abnormal examination results were noted"; and in April 2017, Plaintiff reported pain and tenderness with range of motion, but Plaintiff's treating provider indicated his condition was "stable," and Plaintiff indicated that he was not seeing any specialists and did not want to go back to pain management. Tr. 34, 568, 573, 575, 580, 585.

Plaintiff generally argues the ALJ "improperly found" that Plaintiff's right knee impairment and his lumbar spine pain "were not as limiting as alleged." ECF No. 11 at 17-18 (citing Tr. 30-31). In support of this finding, Plaintiff contends that (1) "it is improper to discredit him because he had sometimes told providers when medication was helping"; and (2) the ALJ's conclusion regarding his lumbar

spine pain "is the opposite conclusion his treating providers reached based on their professional assessments of record." ECF No. 11 at 17-18. However, the Court's review of the ALJ's decision indicates that Plaintiff's treatment records were considered in their entirety, including evidence that at times during the relevant adjudicatory period Plaintiff presented with subjective complaints of pain and muscle spasm, positive straight leg testing and facet load testing, and moderately limited range of motion. Tr. 30-34. Thus, regardless of evidence that could be interpreted more favorably to Plaintiff, it was reasonable for the ALJ to find the severity of Plaintiff's symptom claims was inconsistent with medical evidence. "[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *Burch*, 400 F.3d at 679. The lack of corroboration of Plaintiff's claimed limitations by the medical evidence was a clear and convincing reason, supported by substantial evidence, for the ALJ to discount Plaintiff's symptom claims.

## 2. *Conservative Treatment and Failure to Seek Treatment*

Second, the ALJ noted that "the level of care sought by [Plaintiff] is not fully consistent with the level of impairment alleged. Specialists indicated that surgical interventions were not warranted and recommended continued treatment with conservative modalities including medication and physical therapy." Tr. 38. Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742,

751 (9th Cir. 2007). Furthermore, unexplained, or inadequately explained, failure to seek treatment may be the basis for rejecting Plaintiff's symptom claims unless there is a showing of a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

Plaintiff argues that in 2017, his treating physician noted that she "did not expect additional improvement and all medical procedures and medications had now been exhausted," and "the SSA specifically states the frequency and extent of treatment may be assessed, but in doing so ALJs must consider that a person may only receive periodic treatment or evaluations for medical refills because his 'symptoms have reached a plateau.'" ECF No. 11 at 19 (citing Tr. 545; SSR 16-3p). However, in support of this reasoning, the ALJ outlines evidence of consistent conservative treatment throughout the longitudinal record, including: no activity restrictions or limitations, no indication for surgery, nonoperative treatment with physical therapy, no emergency department visits, referrals to pain management services, and indications that his pain well controlled with treatment. Tr. 30-34 (citing Tr. 348, 391 (back pain stable with current treatment), 396, 423 ("continue all conservative therapy for back pain"), 438, 442, 447-48 (pain "under good control on current regimen" of physical therapy and medication), 488, 529-30 (recommending "nonoperative treatment through physical medicine"), 532, 568, 583, 588-89). Moreover, the ALJ cited a "large gap" in treatment of almost an entire year, from February 2016 to January 2017. Tr. 34. Based on the foregoing,

the Court finds it was reasonable for the ALJ to discount Plaintiff's symptom

claims based on the level of care he sought and the conservative treatment

recommended by Plaintiff's treating providers. This was a clear and convincing

reason to discount Plaintiff's symptom claims.

### 3. Daily Activities

Third, the ALJ found that Plaintiff's level of activity "is not fully consistent

with the level of impairment alleged." Tr. 39. A claimant need not be utterly

incapacitated in order to be eligible for benefits. *Fair*, 885 F.2d at 603; *see also*

*Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain activities

. . . does not in any way detract from her credibility as to her overall disability.").

Regardless, even where daily activities "suggest some difficulty functioning, they

may be grounds for discrediting the [Plaintiff's] testimony to the extent that they

contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

In support of this finding, the ALJ noted that "although [Plaintiff] testified that he

would not be able to do a job that required him to reach his hands in front of him,

he is able to ride a bicycle for significant distances, which typically involves

grasping handlebars by forward reach." Tr. 38. Specifically, Plaintiff testified that

he rode "between two local cities (Selah and Yakima) and that it takes him

approximately 30 minutes (although he noted that he takes some breaks with

inclines)." Tr. 39, 56-58. In addition, the ALJ cited evidence of activities

including caring for his six and seven-year old children with his mother's help,

going on bicycle rides with his children, bicycling for exercise, working in his mother's yard with rest breaks, exacerbating his shoulder injury playing video games, caring for animals in his home, and having no difficulty with hair care. Tr. 29-34, 59, 63-68, 388, 391, 419, 443, 575.

Plaintiff argues that the ALJ improperly discredited him "on the basis of his activities, specifically riding a bike" because he testified that the trip was downhill and required breaks, his "other bike riding was within a few blocks of home with breaks," and his cycling helped with spine stiffness.[3] ECF No. 11 at 20. However,

---

[3] The ALJ also noted that the RFC included limitations on overhead reaching with the right upper extremity, "despite [Plaintiff's] vague reports regarding this alleged limitation," and Plaintiff's failure to allege any difficulties with hair care, "an overhead activity," on his "original function report." Tr. 38. Plaintiff argues the ALJ "improperly discredited him for his arm impairment." ECF No. 11 at 20. However, the ALJ specifically indicated that he "afforded every reasonable inference in [Plaintiff's] favor" and the assessed RFC indicates that Plaintiff can "never reach overhead with his dominant right upper extremity." Tr. 28, 38. Thus, Plaintiff fails to identify any error in the ALJ's consideration of his alleged right upper extremity pain that was not properly accounted for in the RFC. *Molina*, 674 F.3d at 1111 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination").

regardless of evidence that could be viewed more favorably to Plaintiff, it was reasonable for the ALJ to conclude that Plaintiff's documented activities, including his ongoing ability to ride his bicycle even between cities, was inconsistent with his allegations of incapacitating limitations.  Tr. 28-29; *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment); *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld).  This was a clear and convincing reason to discredit Plaintiff's symptom claims.

### 4. *Inconsistencies*

Fourth, the ALJ noted "numerous inconsistencies in the record. For example, for a period, [Plaintiff's] urine drug studies were inconsistent and failed to show the presence of his pain medications despite his reports that he was taking the medication."  Tr. 38.  Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony. *Carmickle*, 533 F.3d at 1161; *Thomas,* 278 F.3d at 958–59 (in evaluating symptom claims, the ALJ may consider inconsistencies in Plaintiff's testimony or between his testimony and his conduct).

As noted by Plaintiff, this finding appears to be based on a single February 2014 treatment note indicating that Plaintiff's blood test was negative, while at the same time he was "firm that he is taking meds as prescribed."  ECF No. 11 at 19 (citing Tr. 374-76); Tr. 30, 488.  However, Plaintiff's treating provider continued

to prescribe pain medications despite the negative blood test; and the ALJ acknowledged that in May 2015, Plaintiff's treating provider indicated his urine screen was consistent with his prescribed medications. Tr. 33, 358, 488, 496. The Court finds this single inconsistency was not a clear and convincing reason for the ALJ to discount Plaintiff's subjective claims. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883–84 (9th Cir. 2006) (a single discrepancy fails, however, to justify the wholesale dismissal of a claimant's testimony). However, even assuming the ALJ erred in this reasoning, any error is harmless because, as discussed above, the ALJ's ultimate rejection of Plaintiff's symptom claims was supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.[4]

---

[4] Plaintiff also briefly contends that the ALJ relied on evidence that was "inadequate" to discredit his symptom claims, including (1) a December 2015 treatment note indicating that Plaintiff benefitted from a previous hip injection, which the ALJ found "contrasts starkly with [Plaintiff's] hearing testimony that the injections increased his pain"; and (2) lack of support in the longitudinal record that Plaintiff used a cane, which the ALJ found did not support a finding that Plaintiff required a medically necessary assistive device. Tr. 34, 38. However, the Court declines to consider these "reasons" because a plain reading of the decision

## B. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester,* 81 F.3d at 830–831). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v.*

---

indicates they were not offered by the ALJ as specific reasons, supported by substantial evidence, to reject Plaintiff's symptom claims.

*Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ need only provide "germane reasons" for disregarding an "other source" opinion. *Molina,* 674 F.3d at 1111. However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

Plaintiff argues the ALJ erroneously considered the 2014, 2015, and 2017 opinions of treating physician Caryn Jackson, M.D.; the opinion of treating provider Maryalice Hardison, ARNP; and the opinion of reviewing physician Dennis Koukol, M.D. ECF No. 11 at 3-13.

1. *Caryn Jackson, M.D.*

In May 2014, treating physician Dr. Jackson opined that Plaintiff was only able to work up to 10 hours per week, hold any one position up to 20 minutes, and lift up to ten pounds. Tr. 523-25. Dr. Jackson additionally opined that Plaintiff was limited to sedentary work, but his condition was not permanent and would

limit his ability to work for only 12 months.  Tr. 524.  In May 2015, Dr. Jackson

opined that Plaintiff was unable to participate in work, needed to change positions

frequently, and was "severely limited" such that he was unable to lift at least two

pounds or unable to stand or walk.  Tr. 520-22.  Again, Dr. Jackson opined that

Plaintiff's condition was not permanent and would limit his ability to work for 12

months.  Tr. 521.  The ALJ considered these 2014 and 2015 opinions jointly, and

found (1) Dr. Jackson's treatment records do not contain objective clinical findings

supportive of the level of impairment opined, and (2) the opinions are not fully

consistent with Plaintiff's reported activities of daily living.  Tr. 35-36.

First, "the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings."  *Bray,* 554 F.3d at 1228; *see also Tommasetti v. Astrue*, 533

F.3d 1035, 1041 (9th Cir. 2008) (ALJ may properly reject a medical opinion if it is

inconsistent with the provider's own treatment notes).  Plaintiff contends that the

ALJ "failed to properly consider the wealth of supportive objective evidence

within this record," including MRI imaging, EMG testing, positive straight leg

tests on the right, positive facet loading and FABER tests on the right, and

Plaintiff's consistent subjective complaints of tenderness and spasms.  ECF No. 11

at 6-7.  However, as noted by Defendant, "this argument does not undermine the

ALJ's reasoning" because Dr. Jackson did not reference these clinical findings in

support of the severe limitations assessed in his 2015 and 2016 opinions.  ECF No.

12 at 10.  Moreover, in support of his argument, the evidence cited by Plaintiff is largely comprised of Plaintiff's own subjective complaints of tenderness and spasm, which were properly discounted by the ALJ; whereas the objective clinical findings by Dr. Jackson during the relevant adjudicatory period are largely benign. *See* Tr. 33-34, 360, 542, 568, 573, 575, 580, 585, 588-89.  Thus, regardless of evidence that could be considered more favorable to Plaintiff, it was reasonable for the ALJ to find the severity of Dr. Jackson's assessed limitations in 2014 and 2015 were unsupported by his own objective clinical findings.

Second, an ALJ may discount an opinion that is inconsistent with a claimant's reported functioning.  *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  In support of this finding, the ALJ found "Dr. Jackson's opinion that [Plaintiff] cannot hold one position for more than 20 minutes is not fully consistent with [Plaintiff's] reported activities of daily living, which include bicycling for up to 30 minutes, doing yardwork (albeit he alleges it takes several days), and bicycling with his children.  It is also not fully consistent with the reports by [Plaintiff's] mother that he can lift up to 10 pounds (but with pain)."  Tr. 36.  Plaintiff argues it is a "minor difference of around 10 minutes, and so hardly an inconsistency"; his bicycle rides were "only a few blocks" and he needed to take breaks; and Plaintiff's "first mention of using a bike was also made in 2017, almost 2 years after Dr. Jackson's assessments were made."  ECF No. 11 at 7.

As an initial matter, contrary to Plaintiff's argument, the record does contain evidence of Plaintiff riding a bicycle "for exercise" going back to 2014. Tr. 32, 442-43, 450. Moreover, Plaintiff testified that he rides his bike regularly for transportation and to help with stiffness in his back, and needs to take breaks due to difficulty in the terrain rather than difficulty maintaining his position for more than 20 minutes. Tr. 56-58. Finally, despite Plaintiff's argument that "[n]o inconsistency is detectable," it was reasonable for the ALJ to find that Plaintiff's ability to lift 10 pounds is inconsistent with Dr. Jackson's 2015 opinion that Plaintiff was "severely limited" which is defined as "unable to lift at least 2 pounds." Tr. ECF No. 11 at 8; Tr. 521. For all of these reasons, it was reasonable for the ALJ to find the severity of the limitations assessed by Dr. Jackson in 2014 and 2015 were inconsistent with Plaintiff's daily activities of bicycling and lifting up to ten pounds. Based on the foregoing, reasons offered by the ALJ for discounting Dr. Jackson's 2014 and 2015 opinions were without legal error and supported by substantial evidence.[5]

---

[5] The ALJ found it "notable" that the treatment notes associated with Dr. Jackson's 2015 opinion indicate Plaintiff was being seen "specifically for paperwork because [Plaintiff] had an appointment scheduled 'after this paperwork is due.'" Tr. 35. Plaintiff correctly notes that "the Ninth Circuit has clearly stated 'the purpose for which medical reports are obtained does not provide a legitimate basis for rejecting

In 2017, Dr. Jackson indicated that Plaintiff would have to lie down during the day for an "unclear duration of time," and were Plaintiff to attempt to work a 40-hour per week schedule it is more probable than not that Plaintiff would miss four or more days of work per month. Tr. 544-45. First, the ALJ noted that "Dr. Jackson's opinion appears to be based, at least in part, upon [Plaintiff's] subjective complaints and reports." Tr. 36. The ALJ may reject a physician's opinion if it is based "to a large extent" on Plaintiff's self-reports that have been properly discounted. *Tommasetti*, 533 F.3d at 1041. However, as argued by Plaintiff, "when an opinion is not more heavily based on patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." ECF No. 11 at 8 (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014)). Here, the ALJ found Dr. Jackson's 2017 opinion was based, "at least in part," on Plaintiff's subjective reports, and the only evidence cited in support of this finding was Dr. Jackson's note that "per patient report" Plaintiff would have to lie down during the day "a lot." Tr. 36 (citing Tr. 544). The Court finds this single notation

them.'" ECF No. 11 at 7. However, to the extent the ALJ erred in considering the purpose for which Dr. Jackson's 2015 opinion was obtained, any error is harmless because the ALJ's ultimate rejection of Dr. Jackson's 2015 opinion was supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

does not rise to the level of substantial evidence to support a finding that Dr.

Jackson's entire opinion is based "to a large extent" on Plaintiff's self-reports.

However, this error is harmless because the ALJ's ultimate rejection of Dr.

Jackson's 2017 opinion was supported by substantial evidence. *See Carmickle*,

533 F.3d at 1162-63. Specifically, the ALJ found that "[o]verall, Dr. Jackson's

opinion is not well supported" by the longitudinal record and the clinical findings

from Dr. Jackson's own treatment notes. Tr. 36. The ALJ may properly reject a

medical opinion if it is inconsistent with the provider's own treatment notes.

*Tommasetti*, 533 F.3d at 1041; *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219,

1228 (9th Cir. 2009) ("the ALJ need not accept the opinion of any physician,

including a treating physician, if that opinion is brief, conclusory and inadequately

supported by clinical findings"). In addition, the ALJ considers factors in deciding

the weight given to any medical opinion, including: treatment relationship, length

of treatment relationship and frequency of examination, supportability,

consistency, and specialization. 20 C.F.R. § 416.927(c).

In support of this finding, the ALJ noted that "the treatment notes associated

with this visit did not note any abnormal examination findings, [Plaintiff] denied

receiving any regular treatment from any specialist, and [Plaintiff] denied any

emergency department visits." Tr. 36. In addition, the ALJ cited a "significant

treatment gap, as a review of the longitudinal record reveals that [Plaintiff] had not

been seen by Dr. Jackson for nearly a year." Tr. 34, 36. Plaintiff argues that,

despite the gap in treatment, Dr. Jackson "had a wealth of objective findings to draw on from her years as his treating physician." ECF No. 11 at 9. However, as noted by Defendant, while Plaintiff argues that Dr. Jackson's 2017 opinion was adequately supported by the EMG and MRI referenced in Dr. Jackson's treatment note, these tests were conducted nearly four years prior to the January 2017 opinion, and Plaintiff "does not explain how these studies supported the degree of limitation assessed in 2017, especially when contemporaneous treatment notes included an entirely normal physical examination." ECF No. 12 at 12-13. Moreover, as discussed in detail above, objective clinical findings by Dr. Jackson during the relevant adjudicatory period are largely benign. *See* Tr. 33-34, 360, 542, 568, 573, 575, 580, 585, 588-89. Based on the foregoing, the Court finds it was reasonable for the ALJ to discount Dr. Jackson's 2017 opinion because it was not well supported by the record, and particularly Dr. Jackson's own treatment notes. *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld). The ALJ's ultimate rejection of Dr. Jackson's 2017 opinion was supported by substantial evidence.

### 2. Maryalice Hardison, ARNP

In April 2017, Maryalice Hardison, a nurse practitioner from the same office as treating physician Dr. Jackson, opined that Plaintiff was unable to work and he was "severely limited," which is defined as unable to left at least two pounds or unable to stand or walk. Tr. 590-92. First, the ALJ found the level of impairment

opined by Ms. Hardison was not fully consistent with her objective examination findings. Tr. 36. The ALJ may properly reject a medical opinion if it is inconsistent with the provider's own treatment notes. *Tommasetti*, 533 F.3d at 1041; *Bray,* 554 F.3d 1219, 1228 ("the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings").

Plaintiff argues this was an improper finding because Ms. Hardison's treatment note included Plaintiff's "prior objective MRIs and EMG"; Ms. Hardison observed that Plaintiff was wearing a back brace; and at the treatment visit Plaintiff reported moderate pain and tenderness with range of motion. ECF No. 11 at 10 (citing Tr. 569-70, 573). However, in making this finding, the ALJ specifically considered Plaintiff's "subjective complaints of spinal pain and pain with range of motion" during his visit with Ms. Hardison, as well Ms. Hardison's notes that a depression screening suggested symptoms of "mild" depression, Plaintiff indicated he was using medical marijuana and did not want to go back to pain management, and Plaintiff denied falls or emergency room visits in the past years. Tr. 36, 567-73. The Court also notes that Ms. Hardison checked the "yes" box in answer to the question "are there specific issues that need further evaluation or assessment," and indicated that Plaintiff needed a repeat MRI of the lumbar and thoracic regions of the back. Tr. 592-92. Based on the foregoing, the inconsistency between Ms. Hardison's largely benign clinical findings, and her assessment that Plaintiff was

"severely" limited, was a germane reason for the ALJ to discount Ms. Hardison's opinion.

Second, the ALJ found "Ms. Hardison's opinion is not fully consistent with [Plaintiff's] reported activities of daily living, which include bicycling for up to 30 minutes, doing yardwork (albeit he alleges it takes several days), and bicycling with his children. It is also not fully consistent with the report by [Plaintiff's] mother that he can lift up to 10 pounds (but with pain)." Tr. 36. Plaintiff generally argues that "these are the same reasons used to discount Dr. Jackson's consistent findings and, for similar reasons [], they cannot be sustained." ECF No. 11 at 10. However, as discussed in detail above, the Court found it was reasonable for the ALJ to find the same severe limitations assessed by Dr. Jackson, namely, the inability to lift at least 2 pounds or stand or walk, was inconsistent with Plaintiff's ability to ride his bicycle for transportation and for fun with his kids, do yardwork with breaks, and lift up to ten pounds. *See Morgan*, 169 F.3d at 601-02 (an ALJ may discount an opinion that is inconsistent with a claimant's reported functioning). This was a germane reason for the ALJ to discount Ms. Hardison's opinion.

Third, and finally, the ALJ noted that "Ms. Hardison is not an acceptable medical source and it appears that she saw him only on the day of his evaluation, [sic] the record does not demonstrate that she was highly familiar with his baseline level of functioning." Tr. 36. Plaintiff is correct that the ALJ may not "simply

disregard" an "other source" observation because it is not from an "acceptable

medical source." *See* SSR 06-03p at *5 ("depending on the particular facts in a

case, and after applying the factors for weighing opinion evidence, an opinion from

a medical source who is not an 'acceptable medical source' may outweigh the

opinion of an 'acceptable medical source.'").  Thus, it would be error to reject Ms.

Hardison's opinion solely on this basis; however, as discussed in detail above, the

ALJ gave additional germane reasons for rejecting Ms. Hardison's opinion.

Moreover, as conceded by Plaintiff, the length and extent of a treating relationship,

which in the case was limited to a single visit with Ms. Hardison, is a relevant

factor in considering the weight given to Ms. Hardison's opinion.  ECF No. 11 at

11 (citing 20 C.F.R. § 416.927(c)).

For all of these reasons, the Court finds the ALJ properly considered Ms.

Hardison's opinion.

### 3. *Dennis Koukol, M.D.*

In October 2015, at the reconsideration level, reviewing state agency

physician Dr. Dennis Koukol opined that Plaintiff could lift and/or carry 25 pounds

occasionally and 10 pounds frequently; stand and/or walk (with normal breaks) for

6 hours in an 8-hour workday; sit (with normal breaks) for 6 hours in an 8-hour

workday; frequently climb ramps/stairs, kneel, crouch, or crawl; and occasionally

climb ladders/ropes/scaffolds and stoop.  Tr. 127.  The ALJ gave Dr. Koukol's

opinion great weight "to the extent that it supports a finding that [Plaintiff] is not

disabled," but also found Plaintiff "to be slightly more limited based on the longitudinal record." Tr. 35. Plaintiff appears to argue that the ALJ erred by giving "great weight" to Dr. Koukol, but failing to adopt his opined limitations into the assessed RFC. ECF No. 11 at 12-13. However, the assessed RFC restricts Plaintiff to sedentary work, as opposed to the "reduced range of medium work" opined by Dr. Koukol. Tr. 27-28, 35. As noted by Defendant, "the ALJ found [Plaintiff] slightly more limited [than] Dr. Koukol assessed. [Plaintiff] does not explain how this finding resulted in any harm." ECF No. 12 at 9. The Court agrees. Because the ALJ's assessed RFC was more restrictive than the limitations assessed by Dr. Koukol, any error was inconsequential to the ultimate non-disability determination, and therefore harmless. *Molina*, 674 F.3d at 1115; *see also Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

## C. Step Five

At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to prove that, based on the claimant's residual functional capacity, age, education, and past work experience, he or she can do other work. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. §§ 416.920(g), 416.960(c). The Commissioner may carry this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions

of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The vocational expert may testify as to: (1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy. *Tackett*, 180 F.3d at 1101. If the claimant can perform jobs which exists in significant numbers either in the region where the claimant lives or in the national economy, the claimant is not disabled. 42 U.S.C. §§ 423(d)(2)(a), 1382c(a)(3)(b). The burden of establishing that there exists other work in "significant numbers" lies with the Commissioner. *Tackett*, 180 F.3d at 1099.

Here, the vocational expert testified that a hypothetical individual of Plaintiff's age, education, work experience, and residual functional capacity could perform the requirements of representative jobs such as escort vehicle driver (3,000 jobs in Washington and 200,000 in the national economy), and stuffer, toys (1,000 jobs in Washington and 200,000 in the national economy). Tr. 40, 77-78.

As an initial matter, Plaintiff generally contends that the ALJ's decision violated POMS DI 25025.030 because the ALJ identified only two jobs that Plaintiff can perform at step five. ECF No. 11 at 13-14. This argument is inapposite. POMS DI 25025.030 does not require the ALJ to cite more than two jobs. Although it recommends that the ALJ cite three occupations, it explicitly states that the ALJ may cite to less than three occupations so long as "it is clear that jobs exist in significant numbers within fewer than three occupations." Social

Security Administration, POMS DI 25025.030 *available at*

https://secure.ssa.gov/apps10/poms.nsf/lnx/0425025030 (last visited Feb. 18,

2020); *see also Hermes v. Sec'y of Health and Human Servs.*, 926 F.2d 789, 791

n.1 (9th Cir. 1991) ("POMS is a policy manual, and therefore, does not have the

force and effect of law. It is, nevertheless, persuasive.").

Next, Plaintiff argues the jobs identified by the ALJ do not exist in adequate

numbers in the nation. ECF No. 11 at 14. The Ninth Circuit has "never set out a

bright line rule" as to what is a "significant number." *Beltran*, 700 F.3d at 389.

However, the Ninth Circuit has held that while it presented a "close call," 25,000

national jobs did constitute a significant number of jobs. *Gutierrez v. Comm. of*

*Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014). Here, Plaintiff argues the vocational

expert did not provide the correct number of jobs for the occupations identified.

ECF No. 11 at 14-16. A vocational expert's "recognized expertise provides the

necessary foundation for his or her testimony." *Bayliss*, 427 F.3d at 1217-18.

Plaintiff cites "Job Browser Pro" to challenge the job data contained in the

vocational expert's testimony. ECF No. 11 at 15. However, as noted by

Defendant, "when a claimant fails entirely to challenge a vocational expert's job

numbers during administrative proceedings before the agency, the claimant forfeits

such a challenge on appeal, at least when that claimant is represented by counsel."

ECF No. 12 at 15 (citing *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017)).

The Court finds no such challenge in the hearing transcript. Tr. 79-81.  Thus, this

line of argument was waived.

Furthermore, courts considering similar arguments have found that lay

assessment of raw data by looking at Job Browser Pro does not rebut a vocational

expert's opinion.  E.g., *Colbert v. Berryhill*, 2018 WL 1187549, at *5 (C.D. Cal.

Mar. 7, 2018) (concluding the ALJ properly relied on vocational expert testimony

regarding job numbers where claimant argued that the expert's numbers were

inflated based on Job Browser Pro estimates; noting that Job Browser Pro is not a

source listed in 20 C.F.R. §§ 404.1566(d), 416.966(d), and the data therefrom

served only to show that evidence can be interpreted in different ways); *Cardone v.

Colvin*, 2014 WL 1516537, at *5 (C.D. Cal. Apr. 14, 2014) ("[P]laintiff's lay

assessment of raw vocational data derived from Job Browser Pro does not

undermine the reliability of the [vocational expert's] opinion.") (internal footnote

omitted); *Merryflorian v. Astrue*, 2013 WL 4783069, at *5 (S.D. Cal. Sept. 6,

2013) (noting cases that "uniformly rejected" arguments that Job Browser Pro data

undermined vocational experts' testimony).  Thus, the Court finds the ALJ properly

relied on the vocational expert's testimony.

Finally, Plaintiff argues the ALJ failed to meet his step five burden because

the escort vehicle driver job identified "is unsuitable, as it requires driving as a

primary job duty.  As [Plaintiff] testified, he was unable to drive during the

relevant period due to his prescription drugs, . . . and he also has no driver's

license." ECF No. 11 at 14 (citing Tr. 52-53, 289, 311). The Court agrees that the evidence in the record consistently indicates that Plaintiff was unable to drive due to pain, marijuana use, and prescription drug medication. *See id*. However, even assuming the ALJ erred in this reasoning, any error is harmless because, as noted by Defendant, the "ALJ also concluded that [Plaintiff] could work as a toy stuffer and the vocational expert testified that there [are] 200,000 of those jobs in the national economy" and 1,000 in the state of Washington. ECF No. 12 at 14. It is well-settled in the Ninth Circuit that 200,000 jobs identified by the vocational expert is a significant number of jobs available in the national economy. Tr. 40, 78; *see Gutierrez*, 740 F.3d at 529 (finding 25,000 jobs in the national economy was a significant number). Thus, the Court finds no error at step five. *Molina*, 674 F.3d at 1111 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination").

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ provided clear and convincing reasons to discount Plaintiff's symptom claims, properly weighed the medical opinion evidence, and did not err at step five. After review the court finds

the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgement shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** March 2, 2020.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge